

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LION HEALTH SERVICES, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § § | NO. 4:09-CV-493-A |
| KATHLEEN SEBELIUS, Secretary, United States Department of Health and Human Services, | § § § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
and
ORDER

Now before the court is the motion of plaintiff, Lion Health Services, Inc., for summary judgment. This action is one of several pending in federal district courts nationwide in which a hospice care provider such as plaintiff seeks an order invalidating a federal regulation relating to the calculation of the annual Medicare hospice provider cap.[1] Having considered the motion, the response thereto of defendant, Kathleen Sebelius, Secretary, United States Department of Health and Human Services

---

[1] The other pending cases are: IHG Healthcare, Inc. v. Sebelius, No. 4:09-CV-3323 (S.D. Tex. filed Oct. 6, 2009); Autumn Light Hospice v. Sebelius, No. 5:09-CV-178-M (W.D. Okla. filed Feb. 13, 2009); Hospice of New Mexico, LLC v. Sebelius, 1:09-CV-145 (D.N.M. filed Feb 13, 2009); Zia Hospice v. Sebelius, No. 1:09-CV-055-CG-LFG (D.N.M. filed Jan. 22, 2009); Compassionate Care Hospice, LLC v. Sebelius, No. 5:09-CV-028-C (W.D. Okla. filed Jan. 12, 2009); American Hospice, Inc. v. Sebelius, No. 1:08-CV-1879-JEO (N.D. Ala. filed Nov. 9, 2008); Autumn Bridge, LLC v. Sebelius, No. 5:08-CV-819-F (W.D. Okla. filed Aug. 8, 2008); Tri-County Hospice, Inc. v. Sebelius, No. 6:08-CV-273-RAW (E.D. Okla. filed July 21, 2008); Heart to Heart Hospice, Inc. v. Sebelius, No. 1:07-CV-289-MPM-JAD (N.D. Miss. filed Nov. 13, 2007). Summary judgment was granted in favor of the plaintiff in Los Angeles Haven Hospice, Inc. v. Sebelius, No. 2:08-CV-4469-GW-RZ (C.D. Cal. July 13, 2009). Another case is currently pending on appeal in the U.S. Court of Appeals for the Tenth Circuit. Sojourn Care, Inc. v. Sebelius, No. 4:07-CV-375-GKF-PJC (N.D. Okla. Mar. 3, 2009), appeal docketed, No. 09-5031 (10th Cir. Mar. 11, 2009).

(the "Secretary"), plaintiff's reply, and pertinent legal authorities, the court concludes that the motion should be granted.

I.

Background

Plaintiff is a hospice care provider in Hurst, Texas. The Secretary heads the federal agency that administers the Medicare program. As a holder of a Medicare provider agreement, plaintiff is reimbursed for the cost of hospice care that it provides to eligible Medicare beneficiaries. As is true for all hospice care providers that participate in the Medicare program, the total reimbursement that plaintiff may receive for hospice care it provides in any given accounting year[2] is subject to a limit or "cap." Amounts reimbursed in excess of the cap are overpayments and must be refunded to the Medicare program.

---

[2]The statutory provisions concerning the hospice cap use "accounting year" to describe the period to which the cap applies. See 42 U.S.C. § 1395f(i). In their briefing, the parties use "fiscal year" to describe that same period. The court notes, however, that Congress used "fiscal year" in other sections of the Medicare Act. Therefore, the court assumes that Congress did not intend "accounting year" and "fiscal year" to mean the same thing. Presumably, Congress chose to use "accounting year" instead of "fiscal year" in the hospice cap provisions in order to allow the Secretary to calculate the cap over any period, rather than forcing alignment with the government fiscal year. The Secretary adopted the twelve-month period beginning November 1 and ending October 31 as the "accounting year." See 42 C.F.R. §§ 418.3, 418.309(a). The hospice regulations call that period the "cap year" or "cap period." See 42 C.F.R. §§ 418.3, 418.309(a). To eliminate any potential confusion caused by the use of so many similar terms, the court in this memorandum opinion and order will use "accounting year" to refer to the period to which the cap applies. The court intends that term to be synonymous with "cap year" and "cap period" as those terms are used in the hospice regulations.

2

On October 22, 2008, plaintiff's fiscal intermediary[3] notified plaintiff that its total Medicare reimbursement had exceeded the cap for the 2006 accounting year by $1,137,113. On July 8, 2009, the fiscal intermediary notified plaintiff that its total reimbursement for the 2007 accounting year had exceeded the cap by $1,124,637. In letters notifying plaintiff of the cap determinations, plaintiff was asked to refund the amounts of its overpayments to the Medicare program.

Pursuant to 42 U.S.C. § 1395oo, plaintiff sought review of the intermediary's overpayment determinations before the Provider Reimbursement Review Board (the "PRRB"), an administrative review panel established to hear disputes Medicare providers have with final decisions of their fiscal intermediaries. Plaintiff argued to the PRRB that the intermediary's overpayment determinations were invalid in their entireties because they were calculated using a regulation, 42 C.F.R. § 418.309(b)(1), that conflicts with the statute describing how the annual provider cap should be calculated. In response to plaintiff's request to seek expedited judicial review of its claims in federal court, the PRRB found that it was without authority to decide the legal question of whether § 418.309(b)(1) was invalid, and, therefore, granted plaintiff's request.

---

[3] A fiscal intermediary is an insurance company that contracts with the Secretary to act on her behalf in processing, reviewing, and paying Medicare claims submitted by providers. Baylor Univ. Med. Ctr. v. Heckler, 758 F.2d 1052, 1056 n.5 (5th Cir. 1985) (citing 42 U.S.C. § 1395h).

Plaintiff initiated the instant action on August 19, 2009. In its "Complaint For Declaratory And Injunctive Relief And For Sums Due Under The Medicare Act," plaintiff alleged that § 418.309(b)(1) is contrary to the plain language of 42 U.S.C. § 1395f(i)(2)(A) and (C), is arbitrary and capricious, and is in excess of statutory authority. As relief, plaintiff seeks (a) declarations that (i) § 418.309(b)(1) is unlawful and set aside and (ii) the intermediary's overpayment determinations for accounting years 2006 and 2007, made under the unlawful regulation, are set aside; (b) an order enjoining the Secretary from (i) enforcing the intermediary's overpayment determinations and (ii) prospectively using § 418.309(b)(1) to calculate overpayments, if any, for plaintiff or any other hospice care provider; (c) an order requiring the Secretary to return to plaintiff all monies that plaintiff has paid toward repayment of the alleged 2006 and 2007 overpayments; and (d) an order requiring the Secretary to pay legal fees and costs of suit incurred by plaintiff.

II.

Plaintiff's Motion for Summary Judgment

Plaintiff recites in its motion for summary judgment that it moves for summary judgment "on its claim that the hospice cap regulation found at 42 C.F.R. § 418.309(b)(1) is invalid as contrary to the express statutory mandate on the method for calculations codified at 42 U.S.C. § 1395f(i)(2)(C)." Pl.'s Mot. for Summ. J. at 1. The court assumes that plaintiff intends to

4

request by its motion that the court grant all relief that would follow from a declaration that § 418.309(b)(1) is invalid. Accordingly, the court will consider all of plaintiff's requested relief in deciding plaintiff's motion.

III.

Description of Pertinent Medicare Act Provisions and Related Regulations

Title XVIII of the Social Security Amendments of 1965, commonly known as the Medicare Act, established a federally subsidized health insurance program for the aged and disabled. Pub. L. No. 89-97, 79 Stat. 286 (codified as amended in scattered sections of 42 U.S.C.). In 1982, Congress amended Part A of the Medicare Act to authorize coverage for hospice care. Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, § 122, 96 Stat. 356, 356-63 (codified as amended in scattered sections of 42 U.S.C.). "Hospice care is an approach to treatment that recognizes that the impending death of an individual warrants a change in focus from curative care to palliative care," and the goal of hospice care is to help terminally ill individuals live their remaining days comfortably, in a home setting. 48 Fed. Reg. 56,008, 56008 (Dec. 16, 1983). Items and services covered by the Medicare hospice care benefit include nursing care, physical and occupational therapy, speech language pathology services, medical-social services, homemaker-home health aide services, physicians' services, short-term

5

inpatient care, counseling, medical supplies, and drugs. 42 U.S.C. § 1395x(dd)(1).

To be eligible to receive hospice care benefits, an individual must be certified by two physicians as "terminally ill," defined by statute as having a medical prognosis that the individual's life expectancy is six months or less. Id. §§ 1395f(a)(7)(A), 1395x(dd)(3)(A). An eligible individual may elect to receive hospice care benefits for two initial periods lasting ninety days each. Id. § 1395d(d)(1). An individual may extend his election of benefits for an unlimited number of subsequent periods lasting sixty days each, provided that he is recertified as "terminally ill" at the beginning of each subsequent period. Id. §§ 1395d(d)(1); 1395f(a)(7)(A).

Medicare reimburses a hospice care provider at one of four predetermined rates for each day that an eligible beneficiary is under the hospice provider's care. 42 C.F.R. §§ 418.301(a), 418.302(a)-(d); see 42 U.S.C. § 1395f(i)(1)(A) (authorizing the Secretary to promulgate regulations for estimating the reasonable cost of hospice care). The applicable rate is determined by the type and intensity of services provided by the hospice on a given day. 42 C.F.R. § 418.302(a)-(d). Although an individual may receive benefits for an unlimited number of days, the total Medicare reimbursement that any hospice care provider may receive for care it provides to that individual in a given accounting

year is limited to a "cap amount."[4] 42 U.S.C. § 1395f(i)(2)(A). According to legislative history, "the intent of the cap was to ensure that payments for hospice care would not exceed what would have been expended by medicare if the patient had been treated in a conventional setting." H. Rep. No. 98-333, at 1 (1983), as reprinted in 1983 U.S.C.C.A.N. 1043, 1043.

A hospice provider is also subject to an overall Medicare reimbursement cap for all hospice care it provides in an accounting year. The overall cap for a given accounting year is calculated by multiplying the "cap amount" for the year by the "number of medicare beneficiaries in the hospice program in that year." 42 U.S.C. § 1395f(i)(2)(A). As defined by the statute,

> the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.

Id. § 1395f(i)(2)(C).

---

[4] The "cap amount" for a given accounting year is equal to:

$6,500, increased or decreased, for accounting years that end after October 1, 1984, by the same percentage as the percentage increase or decrease, respectively, in the medical care expenditure category of the Consumer Price Index for All Urban Consumers (United States city average), published by the Bureau of Labor Statistics, from March 1984 to the fifth month of the accounting year.

42 U.S.C. § 1395f(i)(2)(B). The parties do not dispute that the "cap amounts" for accounting years 2006 and 2007 were $20,585.39 and $21,410.04, respectively.

The Secretary purportedly implemented § 1395f(i)(2)(A) and (C) by promulgating the regulation appearing at 42 C.F.R. § 418.309(b). That regulation, which plaintiff now claims is invalid, provides:

> Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes—
>
> (1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending September 27 (35 days before the end of the cap period).

42 C.F.R. § 418.309(b).

IV.

Analysis

A.   Summary Disposition Is Appropriate In This Action

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is therefore appropriate in cases where the parties agree on the material facts and the only issue before the court is a pure issue of law. Sheline v. Dun & Bradstreet Corp., 948 F.2d 174, 176 (5th Cir. 1991). In this case, the

8

parties do not dispute any material facts, and the only issue the court must decide is a purely legal one: whether the method prescribed in 42 C.F.R. § 418.309(b)(1) for counting the "number of medicare beneficiaries" in a hospice program in an accounting year conflicts with 42 U.S.C. § 1395f(i)(2)(C). Thus, summary disposition is appropriate.

B. <u>Plaintiff Has Standing</u>

Although the Secretary does not dispute plaintiff's standing to challenge the validity § 418.309(b)(1), standing is a threshold issue in every federal case. Accordingly, before deciding whether § 418.309(b)(1) is invalid, the court must first determine whether plaintiff has standing.

Article III of the Constitution restricts federal courts to deciding actual "cases" and "controversies." U.S. const. art. III, § 2; <u>Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471 (1982). The requirement that a litigant have standing is part and parcel of the "case-and-controversy" restriction. <u>Valley Forge</u>, 454 U.S. at 471; <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 37 (1976). In essence, the inquiry into standing ensures that the party invoking the court's jurisdiction, here the plaintiff, has sufficient "personal stake" in the outcome of the dispute such that the dispute is capable of resolution through the judicial process and can be adjudicated by the court within the system of separated powers. <u>Simon</u>, 426 U.S. at 38 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498-99 (1975)). To establish standing for

9

the purposes of Article III, plaintiff must show, at a minimum, that (1) it has suffered "an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent"; (2) the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, brackets, and ellipses omitted).

The use of § 418.309(b)(1) to determine plaintiff's cap, and, ultimately, the amount of its cap overpayments, gives plaintiff standing to challenge that regulation. The use of § 418.309(b)(1) constitutes an injury-in-fact because the amounts plaintiff must refund were calculated using a method other than the method specified by Congress. To show injury, plaintiff does not need to prove that its cap overpayments will certainly be less if calculated under lawful regulations. The legal right asserted by plaintiff in this action is the right to have its cap and cap overpayments calculated according to the method specified by law, not the right to the return of a certain amount of money. See N.E. Fla. Chapter of Associated Gen. Contractors, Inc. v. Jacksonville, 508 U.S. 656, 666 (1994) (holding that the "injury in fact" in an equal protection case is the denial of equal treatment, not the plaintiff's inability to obtain the benefit he

10

was prevented from obtaining by the unequal treatment). In other words, even if plaintiff's overpayments were to *increase* when calculated according to the method called for in § 1395f(i)(2)(A) and (C), plaintiff would still be injured because the amount of its overpayments were calculated according to an unlawful regulation. See Larson v. Valente, 456 U.S. 228, 241-42 (1982) (holding that plaintiff was injured by application of an allegedly unconstitutional statute that required registration with and reporting of financial data to state agency, even though plaintiff might eventually be compelled to register and report for another reason).

The causation and redressability elements of the standing inquiry are likewise satisfied. There can be no doubt that plaintiff's injury is fairly traceable to the promulgation by the Secretary of the allegedly unlawful regulation. Moreover, a favorable decision will redress plaintiff's injury: if the court invalidates § 418.309(b)(1), the Secretary will no longer be able to use it to calculate plaintiff's cap and cap overpayments. That, alone, would constitute substantial and meaningful relief for plaintiff. See id. at 242-43 & n.15. Plaintiff "need not show that a favorable decision will relieve [its] *every* injury." Id. at 244 n.15. Consequently, plaintiff's satisfaction of the redressability requirement also does not hinge on its ability to show that its overpayments will certainly decrease when

11

calculated under lawful regulations.[5] In fact, imposing such a requirement would, in the words of the Supreme Court, constitute a "draconic" interpretation of the redressability requirement. See id. at 243 n.15.[6] For these reasons, plaintiff has standing to challenge the validity of § 418.309(b)(1).

C. <u>The Challenged Regulation Is Invalid</u>

The court evaluates plaintiff's contention that § 418.309(b)(1) is invalid using the two-step analysis established in <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-45 (1984). <u>Sid Peterson Mem'l Hosp. v. Thompson</u>, 274 F.3d 301, 306-07 (5th Cir. 2001). At the first step in the <u>Chevron</u> analysis, the court must determine whether Congress, in enacting § 1395f(i)(2)(C), directly spoke to the precise question addressed by § 418.309(b)(1), that is, how the "number of medicare beneficiaries" in a hospice program in an

---

[5] Plaintiff has provided evidence, in the form of mathematical calculations, that it says show that its cap overpayments for accounting years 2006 and 2007 will decrease by more than $600,000 if its cap for those years is calculated according to the method required by § 1395f(i)(2)(A) and (C). Because the court holds that such a showing is not necessary for plaintiff to establish standing, the court has not evaluated the integrity of plaintiff's calculations.

[6] The court rejects the Secretary's related argument that the court lacks subject matter jurisdiction because plaintiff has not shown that its overpayments will certainly be at least $10,000 less when calculated under the method specified in § 1395f(i)(2)(A) and (C). It is true that 42 U.S.C. § 1395oo(a)(2) requires an amount in controversy of at least $10,000 in order for a provider to obtain a hearing before the PRRB and that a provider may request expedited judicial review only if it qualifies for a hearing. However, the statute also states that "[p]roviders shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy <u>whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question</u> . . . ." <u>Id.</u> § 1395oo(f)(1). The court reads the above-quoted language to mean that the court's subject matter jurisdiction is based on a determination by the PRRB that it lacks authority to decide the question presented by plaintiff's appeal. Such determinations were rendered in this case. The court sees no reason why it should review the PRRB's determination of its own authority at this time.

accounting year should be calculated. 467 U.S. at 842. If Congress was clear about how the calculation should be made, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If, on the other hand, § 1395f(i)(2)(C) is silent or ambiguous with respect to how the "number of medicare beneficiaries" should be calculated, the court must then determine whether § 418.309(b)(1) is based on a permissible construction of the statute. Id. at 843. If it is, the court is bound to give that regulation deference. Id. at 844.

The court need not proceed past the first step of the Chevron analysis. Congress was clear in § 1395f(i)(2)(C) about how the "number of beneficiaries" should be calculated. That statute provides that the number of beneficiaries in a hospice program in an accounting year is equal to the number of individuals who elected to receive hospice benefits (at any time) and were provided hospice care during that accounting year, reduced as provided by § 1395f(i)(2)(C). By its plain language, the statutory requirement that the number be "reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year" can only be accomplished in one way: each such individual who was also provided care in other accounting years must be counted toward the "number of beneficiaries" in that year as a fraction. This interpretation is also the only reasonable one in light of the

13

manifest intent of § 1395(i)(2)(C), which is to cause the amount of a hospice provider's cap to directly relate to number of beneficiaries served by the hospice in a particular accounting year.[7]

Section 418.309(b)(1) clearly does not follow the method described in § 1395f(i)(2)(C). Instead, it drastically changes it. Under § 418.309(b)(1), an individual is included in his hospice provider's cap only in a single accounting year, regardless of whether that individual receives care in other accounting years. Under § 418.309(b)(1), an individual who elected to receive benefits on September 27, 2005, would be included in the "number of medicare beneficiaries" in his hospice program only in the 2005 accounting year, even if that individual continued to receive care into 2006 (and beyond), and an individual who elected to receive benefits on September 28, 2005, would be included in the "number of beneficiaries" in his hospice program only in the 2006 accounting year, even if his care was provided over two or more years. Thus, rather than merely to "reduce" the number of individuals who were provided care in a particular accounting year, the regulation completely excludes individuals who did not elect benefits in that accounting year or

---

[7]The only possible uncertainty is whether the fraction to be used is (i) the number of <u>days</u> of care that the individual received in that year, divided by the total number of <u>days</u> that the individual spent in hospice care across all accounting years, or (ii) the <u>cost</u> of care attributable to the individual in that year, divided by the total <u>cost</u> of care attributable to that individual across all accounting years. Perhaps the Secretary has the discretion by regulation to clarify this possible uncertainty. However, no reasonable argument can be made that § 418.309(b)(1) could legitimately be considered to be a permissible construction of § 1395f(i)(2)(A) and (C).

who elected benefits in the final thirty-five days of the accounting year. Moreover, the number generated by § 418.309(b)(1) does not reflect "the proportion of hospice care that each individual was provided in a previous or subsequent accounting year," as the regulation does not contemplate performance of the fractional calculation contemplated by the statute.

The Secretary makes two arguments in defense of § 418.309(b)(1): First, she says that the operative words of § 1395f(i)(2)(C), "reflect" and "the proportion," are, by their nature, words of ambiguity, and therefore give the Secretary discretion to determine how to count the "number of medicare beneficiaries"; and, second, she says that calculating the number of beneficiaries using the method in § 1395f(i)(2)(C) would be "difficult" and would "greatly increase Medicare's administrative burdens." Def.'s Br. at 21. The court disagrees.

Although "reflect" and "proportion" may be ambiguous in other contexts, the meaning of those terms as they are used in § 1395f(i)(2)(C) is made clear by reference to the words immediately surrounding them in that statute. See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (stating that the plainness or ambiguity of statutory language is determined by reference to the language itself and the context in which the language is used). As the court in Los Angeles Haven Hospice, Inc. v. Sebelius, stated: "Congress unquestionably required that the number of medicare beneficiaries be reduced to reflect 'the

15

proportion' (not simply <u>a</u> proportion or <u>an</u> estimate as defendant would apparently have 'reflect' mean in this context) of hospice care that 'each such individual' (not individuals in the aggregate) 'was provided in a previous or subsequent accounting year.'" No. 2:08-CV-4469-GW-RZ, slip op. at 7 (C.D. Cal. July 13, 2009) (footnote omitted). As for the Secretary's second argument, no matter how burdensome § 1395f(i)(2)(C) may be to administer, the method prescribed therein is the law, and the Secretary cannot act contrary to the law. <u>See</u> 5 U.S.C. § 706(2)(A); <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 91 (2002).

For the reasons discussed above, the court concludes that § 418.309(b)(1) is manifestly contrary to § 1395f(i)(2)(C), arbitrary and capricious, an abuse of discretion, not in accordance with the law, and should be set aside. 5 U.S.C. § 706(2)(A), (2)(C); <u>Chevron</u>, 467 U.S. at 844.

V.

<u>Relief to be Granted</u>

The Administrative Procedure Act, specifically 5 U.S.C. § 706(2), gives the court authority to declare § 418.309(b)(1) unlawful and to set that regulation aside. Section 706(2) states that a court reviewing agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] (C) in excess of statutory . . . authority." 5 U.S.C. § 706(2).

The APA likewise permits the court to enjoin the Secretary from prospectively using § 418.309(b)(1) to calculate plaintiff's cap and from enforcing the intermediary's overpayment determinations against plaintiff because the federal government, through 5 U.S.C. § 702, has waived its sovereign immunity in actions "seeking relief other than money damages."  Id. § 702; Anderson v. Jackson, 556 F.3d 351, 359 (5th Cir. 2009).

Section 702 also permits the court to order the Secretary to return all monies that plaintiff has already repaid pursuant to the 2006 and 2007 overpayment determinations.  Bowen v. Massachusetts, 487 U.S. 879, 893 (1988).

The court is not at this time making an award of attorney's fees, as plaintiff has requested.  However, the final judgment of this court is without prejudice to any request plaintiff might wish to make for recovery of attorney's fees under the authority of 28 U.S.C. § 2412.

VI.

Order

Therefore,

For the reasons discussed above,

The court ORDERS and DECLARES that 42 C.F.R. § 418.309(b)(1) is unlawful and that it be, and is hereby, set aside.

The court further ORDERS that:

(1) The Secretary is hereby enjoined from enforcing against plaintiff overpayment determinations calculated by use of 42 C.F.R. § 418.309(b)(1);

(2) The Secretary is hereby enjoined from using 42 C.F.R. § 418.309(b)(1) to calculate the maximum amount to be paid to plaintiff for hospice care, as contemplated by 42 U.S.C. § 1395f(i)(2), for any past, present, or future accounting year; and

(3) The Secretary shall cause to be refunded to plaintiff all monies paid by plaintiff to the Medicare program pursuant to previously calculated repayment obligations for accounting years November 1, 2005-October 31, 2006, and November 1, 2006-October 31, 2007.

SIGNED February 22, 2010.

_____
JOHN McBRYDE
United States District Judge